Keval, are you ready to proceed? Yes, your honor. Go ahead. Thank you, and may it please the court. Counsel, my name is Shira Keval. I represent Mr. Russey in this appeal. The district court made two errors calculating Mr. Russey's sentencing guidelines. First, it increased his base offense level based on an overly broad drug conviction that was plainly not a controlled substance offense. And second, it added the in connection with enhancement after erroneously ruling that it did not need to resolve the factual dispute between Mr. Russey and the government that went to the another felony offense. Together, these two mistakes more than doubled Mr. Russey's guidelines range. In this case, should be remanded for resentencing. What do we like to start about the fact that he didn't properly object on the first issue? And your honor, we have acknowledged from the outset that this is a plain error question. But I believe that if you look at the Supreme Court's case law and this court's case law on the categorical approach, that this error is plain. Every single time that this court or the Supreme Court has gone through the categorical approach, whether defining a term in a statute or defining a term in the guidelines, there has been one unbendable rule, which is that every term must have a single uniform federal definition that is not dependent on state law. The definition that Mr. Russey has proposed here, the controlled substance offense means an offense involving a federally controlled substance follows that rule. But the proposal from the government does not. And one of the other things that's very clear from all of the case law from the Supreme Court in this court is that if a party proposes a seemingly uniform definition that in fact depends on what a state has chosen to criminalize or how a state has chosen to label a crime, that's unacceptable. That is, I think, clearest from the case that was in the 28-J letter that I submitted this week, Esquivel-Quintana v. Sessions, where the government proposed a very, very similar definition to what it proposes in this case, therefore sexual abuse of a minor. And the unanimous Supreme Court said that to do what the government did, it turns the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the state where the defendant was convicted. They rejected that out of hand, and that's exactly what the government has done here. The government says, oh, it's a common-sense dictionary definition. The problem is, is that the dictionary that they chose refers back to what a state has chosen to criminalize and potentially even to how the state has chosen to label that. And that is not acceptable. How do you deal with our standard for determining whether an error is plain, which states that if we don't have a holding in this circuit, in a precedential opinion, we look at other circuits, and if they're split, and you'd have to acknowledge they're split on this question, then we conclude the error is not plain, assuming there was an error. How do you get around that? Go ahead. I think that's a good question, but I think that this court has been very clear to leave the door open and say that that's probably going to be the result. But there's a number of cases, wolf name, where the court has also said, if there's a circuit split, we can still get around that circuit split. And here, I think one of the things that's important to do is to look at- On plain error, we have cases where we've done that? Yes, Your Honor. I think that Brown says the absence of circuit precedent does not prevent story, says a circuit split is not dispositive on the question of whether an error is plain. Baum says this is so even when no authority for the Supreme Court or this circuit would compel a termination that there was error, and there is contrary authority in other circuits. There's a door open, and I think, Judge Hartz, if you look at the two published- We've never gone through that door, though, right? I think that you could quibble about whether this court has gone through that door. In wolf name, the court was very clear to say, well, this is actually compelled by our precedent. But the exact issue hadn't been determined in wolf name. So I do think that the court has been hanging out at the doorway, and I think that there are very good reasons to go through it in this case. One is that this is how the categorical approach has worked since I was in elementary school. And the government, in case after case, has proposed definitions saying that's not how this should work, let's try this, that this court and the Supreme Court continues to reject. But the other reason, I think if you look at the published cases from the circuits that have come out the other way, you see where they went astray. And where they went astray can't be fixed, and isn't consistent with Supreme Court law and this law, the law of this case, of this circuit, excuse me. So one of the things that these cases have found most important is that the definition in the guidelines of controlled substance offense says that it has to involve, it can involve a conviction under state or federal law. The Second Circuit deals with that, I think, very effectively in Townsend, which says, well, that's talking about a conviction. It's saying you can have been convicted in state court for a state offense, and that's all it says. But it's also important to look at the other statutes. So the statute that the Supreme Court was looking at in Esquivel-Quintana, the Immigration and Naturalization Act, also uses that phrasing. The Armed Career Criminal Act also uses that phrasing. The guidelines definition of crime of violence also uses that phrasing. And yet in case after case, this court has rejected any attempt to define burglary, robbery, attempt, felony, expunged, counterfeit substance, distribute, distribution, physical force, crime of violence. All of those terms have been given a single uniform federal definition that is not dependent on state law, what a state has chosen to criminalize, or how a state has chosen to label that offense. The other mistake that these circuits are making is that they are creating a false equivalency. So they, like this court, have a case saying counterfeit substance. Counterfeit is not a counterfeit. The dictionary definition, it means fake. Those courts say, well, in that case, then we must not be using the Controlled Substances Act here, and we must need something else. But the problem is the next step that those courts take, which is to say, well, therefore, let's just go with whatever it is that the states say a controlled substance is, whatever the states have actually decided to control. And the word counterfeit and the word controlled are just so different that this is a false equivalency. Controlled simply can't mean anything outside of regulated by the state, illegal in the state, something that is dependent on state law. And then I think, finally, the mistake that these courts make is that they have these two proposals in front of them. They spend most of their time rejecting the defendant's proposal, but they don't really grapple with the government's proposal. And I think I suggested in my reply brief that there's potentially a third definition, and this was in response to what the government had brought up about Thomas, and that is, well, then you can look at the laws of all the states. If you don't think that controlled substance is a technical term, and I do believe that it is, and I'll get into that in a minute, but even if you don't believe that that's a technical term, it still needs to have a generic federal uniform definition. And the way that this court in the Supreme Court looks for that, again, is not to see what a state has regulated, but to see what all of the states have regulated. And here, over 30 states have said that they don't regulate TFMPP. The federal government does not regulate TFMPP. Oklahoma is one of the outlier minority jurisdictions. But what was the present guideline is an amendment of an earlier guideline. Do you have the language of that earlier guideline? Yes. What was that language? It said the term controlled substance offense, as used in this provision, means an offense identified in, and then it lists statutes in Title 21 of the United States Code for Offenses. So that was, I think, the guideline in the original guidelines manual. In 1989, there was an amendment, and the express purpose of that amendment was to clarify the definition of controlled substance offense. There's nothing that said it's trying to change it, it's trying to broaden it, or anything like that. It was trying to make it more clear. But I also think there's a couple other important things about this amendment, which is it never said controlled substance as defined in the Controlled Substances Act. That's what the ACCA said. It didn't say that, and so it's not like the Guidelines Commission took that out at some point. Rather, instead of using some offenses and saying, and similar offenses, it changed it to say, okay, well, it's a state or federal offense that involves, and then it lists all of the different acts that are involved in those statutes. So involves manufacture, import, export, or distribution of a controlled substance, or the possession of a controlled substance with intent to do one of those activities. So I don't think that that is the Guidelines Commission saying we're getting away from the definition of controlled substance. It's rather the Guidelines Commission saying, you know, we need to clarify this, and just listing a bunch of statutes is confusing. We are going to list what the actions are that are important, and then instead of saying, and similar offenses, we'll say, well, if it's a state or federal offense, it still counts. So I don't think that that changes the analysis here. Well, there's a principle, I think you cited, that you don't want someone's sentence to depend on the idiosyncrasies of local law. You're familiar with that? Of course. But doesn't your argument lead to that? Because two people sell meth, one in a state that only includes federal controlled substances, and the other in a state that includes federal controlled substances, and then a couple other substances, which, for all we know, have never been prosecuted. So the person in this second state, where they have 100 substances listed, and they add another three, that person is sentenced differently, because under the categorical approach, you consider anything that can be prosecuted under the statute. So if the Sentencing Commission wanted to allow prosecutions under that state's law to be considered, wouldn't it use the language it did? Prosecute it under state or federal law for controlled substances? And that would lead to greater uniformity, so that two people who sold enhancements? And, Your Honor, I think that that would be a reason to get rid of the categorical approach entirely. I don't think that that's what this guideline would say, if the intent here, before Taylor, the amendment, again, before Taylor was ever decided, if the intent here was to anticipate the categorical approach and get around it, I don't think this is the language they would use. And again, the Second Circuit in Townsend discusses this, and they give an example of the language that instead of saying an offense under federal or state law, it would say prohibiting the manufacture, import, or export distribution of a state or federally controlled substance. That would be a very... That would be better. That would be clearer. I don't know that draftsmen are always that, draftspersons, excuse me, are always that precise about it. But doesn't that raise at least enough questions that we shouldn't override the fact that there's a split in the circuits on this issue? No, Your Honor, because the definition of crime of violence in this very same guideline says any offense under federal or state law. So here, an offense under a federal or state law, there, any offense under federal or state law, those are not distinguishable. And the Supreme Court has made very, very clear, and as has this court, that we're not... That's not what that phrase means. That's not a valid way to interpret that phrase. That doesn't get us away from the categorical approach. The INA says violation of federal or state law. The ACCA also includes offense under state law. So this phrase that these courts have honed in on and that Your Honor is asking about, those are everywhere. Those are in all of the statutes that we always use the categorical approach to interpret. And I understand the concern that Your Honor is raising, but here, the term controlled substance, it doesn't derive from the federal legislation, but that's really where it was first used was in the Federal Controlled Substance Act, which was followed shortly by the State Uniform Controlled Substances Act that most states adopted, including Oklahoma, that tracked the federal schedules exactly. It happens to be that Oklahoma has changed that. And over the years, they've added and subtracted, and they haven't followed the federal government when they've done that. And that creates the same problem as states that have burglary statutes that are not divisible between residential burglary and other burglaries. And I see that I'm out of time. Thank you, counsel. Ms. Hutzel. Your Honor. May it please the court. My name is Jacqueline Hutzel, and I'm representing the United States. Neither of the two issues here survived the plain error analysis. Even so, the guidelines were correctly calculated, and the sentence should be affirmed. First, the district court judge reviewed the PSR, police reports, 911 call, body cam video of the victim interviewed at the incident, audio recordings of an interview the detective did of the victim two days after the incident, a sworn statement in the protective order, and hearing the defendant's version of events through his counsel. The district court then found that regardless of whether or not the victim was at some point the aggressor, that there was a factual basis to show the defendant possessed the firearm in connection with a felony assault and battery with a dangerous weapon. The judge correctly overruled the defendant's because we were looking at a broader, more inclusive language in the guidelines, not the ACCA, language that the Sentencing Commission clearly intended to apply to substances controlled under state law. Now, I'd like to make a few points about some of the things that opposing counsel talked about in her oral arguments. First, with regards to the circuit split on the drug controlled substances offense, this court has said in Teague that no plain error, that there is no plain error if there is a circuit split. The cases that the defendant used in support that an error might be plain in spite of a circuit split were very specific, and there were four reasons that brought such an exception. One, obviously, that there was Supreme Court or Tenth Circuit precedent. Two, that there is unambiguous statutory command, which was what happened in the bomb case. Or third, that there is Tenth Circuit or Supreme Court authority on identical statutory language, which is what happened in the Solace case. Or fourth, that split circuit decisions had actually themselves been abrogated, which also happened in the Solace case. And none of those are the case here. And because of that, we think that the circuit split itself would indeed make this error plain. Another thing I want to address that counsel discussed was the Esquivel-Quintana versus Sessions Supreme Court decision that she filed this week. And if you look closely at that case, they actually specifically declined to define, to wholesale import the statutory definition into the statute they're looking to. And they do that in part because it was not specifically cross-referenced, and also doing so would needlessly exclude numerous states. Also, with regards to uniformity, which is connected to that, I want to point out the United States versus Castleman decision in the Supreme Court. And in there, they found that one reason to reject the defendant's interpretation of force in the domestic violence context of 18 U.S.C. 922 G-9 was because the definition would have rendered that statute ineffectual in at least 10 states. And that is another reason why here that many of the drug laws would actually be excluded would be a reason to reject. Another point I'd like to make, in defense counsel's reply brief, they rely on the case United States versus Abdel Jawad, which is the Tenth Circuit case. And they say that that case defined the controlled substance offense as one from being specifically federal. Well, it's important to note that in that case, the court was actually looking at 2D1.1. And it's important because it's a different guideline than we're looking at here. But also, they were looking at defining controlled substance offense for a federal conviction, not a prior conviction, but actually the thing that the defendant was convicted of in federal court. So obviously, in that case, the controlled substance would have to be federally regulated. But also that court said something really important. And I want to point this out here. The Tenth Circuit, they are recognized, and I want to quote this. And while the word controlled may have a plain and ordinary meaning, whether a substance is controlled, must of necessity be tethered to some state, federal or local law. And so this court has already recognized that the word controlled does indeed have to be tethered to some law and that it could indeed be state. And so even though in that case, it was referring to it, it tethered to federal law, it was because it was specifically looking at what had to be a federal conviction. Another point I want to make with regards to some of the cases in the circuit split. So I want to that decided it that agree with what we are proposing. Both of them relied on circuit decisions and reasonings that they made in defining counterfeit substances. The cases they relied were relied on Mills and Ruth relied on Hudson. And this is exactly what we're asking this court to do today and rely on the analysis that this court has already decided in Thomas with regards to counterfeit substances. Second, I'd like to point out that in Ruth, the circuit court there did not apply the statutory enhancement for 21 USC 851, looking at the same conduct, specifically because it was overly broad for that statutory definition. But they found in the alternative that the language of this particular guideline 4B1.2 did include the same conviction. And third, with regards to Townsend, I think where Townsend went wrong, was specifically its reliance over reliance on the Jerome presumption. And the Jerome presumption says that we should not rely on state law, but it says, in the absence of a plain indication to the contrary. And I can't imagine a more plain indication to the contrary than specifically using the language that we have here, that it includes federal or state law. Another thing I'd like to point out is that in the defendant's briefs, in the reply brief in particular, the defendant praises Thomas because selling baking soda as masquerading as cocaine is distributing now counterfeit controlled substance the country over. But if this court accepts the defendant's proposal, distributing actual cocaine in Oklahoma and numerous other states would not be a qualifying offense the country over. If there are not any more specific questions on that issue, I'd like to turn to the another felony offense issue. In the another felony offense issue, rule 32 requires that the court rule on a dispute or determine that that dispute is unnecessary because it doesn't affect sentencing or the court won't consider it. In this case, the judge did both. He ruled on the objection, he ruled on the dispute, and said that there was a factual basis that the defendant possessed the firearm in connection with the felony offense, specifically assault and battery with a dangerous weapon. He also determined that the specific factual dispute, whether or not who was the initial aggressor, it was unnecessary to determine that because the facts supported it, even if at some point the victim had been the initial aggressor. And I want to expand a little bit on the ION case, which we referred to in our brief, the United States versus ION, which is the Tenth Circuit case. In that case, similarly, the defendant argued self-defense, and the court overruled the objection and applied the four-point enhancement. And the court in that case, or the Tenth Circuit in that case, said that a ruling on a disputed issue need not be exhaustively detailed, but it must be definite and clear. And that's the case here. The judge did not get into a lengthy description of the factual basis, but he did definitively rule on it. And also, that court said the only avenue by which the district court could have arrived at its conclusion that the firearm was used in connection was to believe one count over the other. And that's exactly what we have here. And that court said, and I'll quote here, we need not engage in conjecture to determine the district court's reasoning. As presented, the district court had to choose between conflicting statements of two witnesses. And that's exactly what happened here. And with regards to plain error, we obviously don't... Wait a minute. As I understand it, we don't know what happened here because there is a conflict. He says that she had the gun initially because it was under a pile of clothes. She gets the gun. He is trying to wrestle it away from her when it goes off. Now, and so under one version, that would be what the assault was. When the gun went off, when he was trying to keep her from using it on him. So it seems to me you have to resolve that factual dispute because he didn't really assault her. He was just trying to wrestle the gun away from her so she didn't shoot him. And then he ends up with the gun. And lo and behold, like her, he's a felon and he possesses the gun. That sounds like a factual dispute that needs to be resolved. Well, your honor, I think that in the Oklahoma state court, there are cases which we cited in our brief where even if there is an initial aggressor, a self-defense, that once that circumstance, according to his version of the facts, the threat was not gone until after the gun went off because it went off while he was wrestling with her. Right. And I don't think here that we are necessarily arguing that when the gun went off was the assault with the dangerous weapon, but the assault and battery continued. And the victim actually stated in numerous statements that it continued after the defendant had the gun and moved into the living room. And so at that point, when the defendant definitively has the gun. Well, there was assault on somebody else in the living room, correct? No, it was the same victim. There was a witness in the living room. And actually, if you listen to the 911 call, which is in the record here, the defendant, that is after the gun has gone off and it is five minutes long and the defendant has the gun that entire time, you can hear it in the in the audio recording and he does not. But that doesn't mean he's using it in a threatening way. But the assault has continued at this point after he he definitively has the gun. I thought he denied that. He did not. Didn't he say that once he was wrestling with her and the gun goes off and he eventually gets it away from her? Isn't his testimony consistent with the proposition that that's when his assaults ended? Well, he had he had numerous versions of the event. Originally, he actually said that he never touched her. And that's what he said immediately. And this this this goes on. But I think that the the evidence in the record shows that the assault, the assault did continue. We're not talking about what the evidence in the record is. What we're talking about is whether there is a conflict in that. And isn't his testimony consistent with once he wrestles the gun away from her and the gun goes off and he then has control of the gun, his assault ends? Isn't that what it's consistent with his testimony? With his his version through counsel, none of that was not in evidence. That's the conflict. But he says that happened, which you agree with. And she says something else happened. That's a conflict the judge is obligated to resolve. But I would like to make two points with regards to that. So first, the the the court did. He said he did not have to determine whether or not there was initial aggressor because from all of the evidence that he saw, that regardless of if there was an initial aggressor, there was still an assault and the firearm was possessed in connection with that, which could have been after the defendant then affirmatively had the gun. And he did rule on that. You're saying that you're saying that the conflict Judge Murphy pointed out a conflict in evidence. You're saying the judge resolved. The conflict, at least to say that there was an assault by the defendant. Yes. Yes, your honor. But isn't that inconsistent with the judge also saying I need not resolve any conflict? Well, I think he resolved the conflict that there was a factual basis for the defendant possessing a firearm in connection. He also said he need not resolve any need not resolve specifically whether or not at some point the victim had been an aggressor. Was that let me range without applying a four level enhancer. Without applying the four level Hansen, it would have been 70 to 87 months. And that, again, was the one part of our argument is that it would be harmless because he specifically outlined why that guideline would not have been enough and he would have sentenced. But the other day that he applied was beyond the guidelines without four level sense. Yes, your honor. And I see that I am out of time. Thank you, counsel. Thank you. Your time has expired. Miss people. Um, cases submitted. Counselor excused.